United States District Court
District of Massachusetts

| | |
|---|---|
| Dion Quinn, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>Lloyd J. Austin et al., )<br>)<br>    Defendants. )<br>) | Civil Action No.<br>24-10285-NMG |

**MEMORANDUM & ORDER**

GORTON, J.

Plaintiff, Dion Quinn ("plaintiff" or "Quinn"), has filed a discrimination action based upon allegations that he was treated unequally, retaliated against and subjected to a hostile work environment during his employment at the Military Entrance Processing Station in Boston, Massachusetts. Now pending before the Court is the motion to dismiss of defendants, Lloyd Austin, the Secretary of Defense, and Christine Wormouth, the Secretary of the Department of the Army (collectively, "defendants"). For the reasons set forth below, the motion will be allowed.

## I. Background

In May, 2016, plaintiff began employment by for the federal government as a clerk at the Military Entrance Processing Station in Boston, Massachusetts. During that employment, he was allegedly subject to an inconsistent work schedule, had some

- 1 -

of his assignments transferred to co-workers and did not receive certain overtime pay owed to him. He also claims that he was subject to discriminatory conduct by other employees, who made demeaning comments, questioned his need to take breaks and displayed a Confederate flag near his work area. In July, 2016, Quinn contacted a counselor at the Equal Opportunity Employment Commission ("EEOC") to report the alleged discrimination and, in October, 2016, he submitted the first of two EEOC complaints restating those allegations.

Plaintiff later requested to amend his first EEOC complaint to include additional allegations of conduct that occurred later in 2017 but the Administrative Law Judge ("ALJ") assigned to the case denied his request to amend. The United States Army, as plaintiff's employer, moved for summary judgment on all of plaintiff's claims which was allowed. Quinn appealed but the EEOC issued a final agency action affirming dismissal, and his motion for reconsideration was denied.

In March, 2020, while plaintiff's first EEOC case remained pending, he filed a second complaint with the EEOC that alleged hostility and discrimination based upon his race as well as retaliation against him based upon his decision to file the first complaint. His second complaint was ultimately dismissed.

Acting pro se, Quinn filed suit in May, 2023, in the United States District Court for the Eastern District of Washington.

As a result of a motion to transfer venue in February, 2024, the case was transferred to this Court and petitioner filed a first amended complaint. Defendants moved to dismiss and, in opposition, plaintiff attempted to raise new factual allegations. In light of his pro se status, the Court authorized plaintiff to file a second amended complaint which he did. Although the complaint does not articulate specific counts against defendants, plaintiff appears to make allegations that defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination Employment Act ("ADEA") by discriminating based upon plaintiff's race and age.[1] Defendants now move to dismiss for failure to state a claim. In his opposition to defendant's motion to dismiss, plaintiff attempts to state a claim under the Americans with Disabilities Act ("ADA") which is procedurally improper and will not be addressed further. See Decoulos v. Town of Aquinnah, No. 17-cv-11532-ADB, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018) (recognizing that even a pro se plaintiff "cannot bolster" his complaint "through the late addition of new facts in opposing a motion to dismiss").

---

[1] Plaintiff refers, in passing, to the equal protection clause of the Fifth and Fourteenth Amendments but does not further elaborate on those claims, rendering them inviable at this stage. See Forte v. Sullivan, 1992 WL 135709, at *1 (1st Cir. 1992) ("Even pro se complaints based on civil rights statutes must do more than state simple conclusions." (alteration omitted)).

II. **Legal Standard**

To survive a motion to dismiss, a plaintiff's complaint must contain factual matter sufficient to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible if, after accepting as true all non-conclusory factual allegations, the Court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

When a complaint is filed pro se, the Court will construe it more liberally. Facey v. Dickhaut, 892 F. Supp. 2d 347, 351 (D. Mass. 2012). Pro se status does not, however, relieve a party from the need to comply with procedural rules and present sufficient facts to state a viable claim. Brown v. Dep't of Veteran Affs., 451 F. Supp. 2d 273, 277 (D. Mass. 2006).

III. **Application**

a. **Exhaustion of Title VII Claim**

In their motion to dismiss, defendants first argue that this Court should dismiss most of plaintiff's allegations

- 4 -

because he did not properly raise them in his complaint before the EEOC and thus failed to exhaust them.

It is well settled that federal courts cannot entertain claims under Title VII, including claims brought by federal employees, unless all "administrative remedies have first been exhausted." Rodriguez v. United States, 852 F.3d 67, 78 (1st Cir. 2017) (citing Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009)); Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011). To meet the exhaustion requirement, an employee must first "seek relief in the agency that has allegedly discriminated against him" before filing suit in federal court. Id. at 78-79 (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976)).

If an employee files a complaint containing unexhausted allegations, his relief is "limited to the allegations of discrimination first presented in the EEO complaint." Id. at 79; see Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003) ("[A] Title VII cause of action is limited to those discrimination and retaliation allegations . . . that were previously the subject of a formal EEO complaint."); Velazquez-Ortiz, 657 F.3d at 71 ("[A]n EEO complaint does not open the courthouse door to all [other] claims of discrimination."). Relevant to the EEOC, an employee who believes he was subjected to a discriminatory employment practice under Title VII must

exhaust his claim by contacting an EEOC counselor within 45 days "of the date of the matter alleged to be discriminatory." 29 C.F.R. §1614.105(a)(1).

The purpose of the exhaustion requirement is to provide employers, including the federal government, with "prompt notice of the claim [and to] create an opportunity for early conciliation." Id. at 78. As applied to the federal government, exhaustion is a condition to the waiver of sovereign immunity, under which the government would otherwise be immune from suits against it. Vazquez-Rivera v. Figueroa, 759 F.3d 44, 47-48 (1st Cir. 2014) (internal quotations omitted); see Barrett ex rel. Est. of Barrett v. United States, 462 F.3d 28, 36 (1st Cir. 2006) ("The United States, as a sovereign, cannot be sued absent an express waiver of its immunity."). The requirement of exhaustion must therefore be strictly construed. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 94 (1990).[2]

In this case, plaintiff alleges that, although he did not file his first EEOC complaint until October, 2016, he contacted an EEO counselor on July 15, 2016. As such, the Court ought to consider any claims arising 45 days before July 15 as part of plaintiff's complaint, as well as those incidents that occurred

---

[2] Although defendants assert that exhaustion is a jurisdictional requirement, it is more aptly addressed as a ground for dismissal based upon failure to state a claim. See Newman v. Lehman Bros. Holdings, Inc., 901 F.3d 19 (1st Cir. 2018) (indicating that exhaustion is "not jurisdictional in nature").

up to and including March, 2017, that were included in plaintiff's first EEOC complaint. See 29 C.F.R. §1614.105(a)(1). Plaintiff's complaint, however, also includes allegations of numerous events that occurred from April, 2017, to September, 2019, that were not raised before the EEOC and which must therefore be disregarded now. See Morales-Vallellanes, 339 F.3d at 18.

Nevertheless, Quinn suggests that he should be permitted to bring unexhausted claims because his request to amend his complaint before the EEOC was denied for failure to timely do so. Plaintiff contends that this Court should disregard that untimeliness under Fed.R.Civ.P. 60(b) but nothing in that rule for relief from a judgment permits a federal court to alter the decision of an administrative agency to deny a plaintiff's untimely request to amend his complaint. Because numerous allegations in plaintiff's complaint are beyond the scope of his EEOC complaint and were not properly added thereto, the Court will not consider such unexhausted claims here.

Nor is plaintiff entitled to a waiver of the exhaustion requirement under a theory of equitable tolling. That doctrine will extend a statutory time limit, including Title VII exhaustion limitation, see Farris v. Shineki, 660 F.3d 557, 563 (1st Cir. 2011), if the plaintiff demonstrates 1) that he has been pursuing his rights diligently and 2) that some

extraordinary circumstance prevented him from timely filing his claim. Menominee Tribe of Wis. v. United States, 577 U.S. 250, 255 (2016) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)).

As grounds for "extraordinary circumstances," plaintiff tacitly cites his medical conditions but fails to indicate how any specific condition directly contributed to his inability to file a timely claim. Cf. Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011) (agreeing that a lengthy hospital stay including six surgeries, bed confinement and heavy medication constituted an extraordinary circumstance making it impossible for plaintiff to file a timely claim). Plaintiff's case is therefore undistinguishable from most other discrimination cases, in which courts "take a narrow approach to granting equitable exceptions" that would excuse the necessity of exhaustion. Rodriguez v. Putnam Invs., No. 06-10819-MLW, 2007 WL 9798216, at *3 (D. Mass. Sept. 15, 2007); see Chico-Velez v. Roche Prods., Inc., 139 F.3d 56, 58-59 (1st Cir. 1998).

### b. **Timeliness of the Title VII Claim**

Defendants next contend that, even as to plaintiff's exhausted allegations, the Court should disregard any of those that occurred after 2019 because plaintiff did not timely raise them before this Court.

Once an aggrieved federal employee has exhausted his remedies with the EEOC, he can appeal the dismissal of his complaint by filing a civil action in federal court. See 29 C.F.R. §§1614.401, 407. That action must be filed within "90 days of receipt of the agency['s] final action." 29 C.F.R. §1614.407(a); see 42 U.S.C. § 2000e-16(c) (stating that federal employees have 90 days from the "receipt of notice of final action taken" to file a civil action in federal court); Loubriel v. Fondo del Seguro del Estado, 694 F.3d 139, 142 (1st Cir. 2012) ("If the claim does not bring [the Title VII] suit within the prescribed 90-day period, the action is time-barred."). If the EEOC does not issue a final agency decision, the decision of the ALJ becomes the agency's final decision within 40 days of receipt and is subject to the same 90-day limitations period. See 29 C.F.R. §1614.109(i); see also 29 C.F.R. §1614.407(a).

The parties do not dispute that, with respect to Quinn's first EEOC complaint, he timely filed his claim in federal court. As to plaintiff's second EEOC complaint, however, plaintiff failed to amend his complaint within the required time to challenge dismissal. In relevant part, his second EEOC complaint addressed conduct occurring between October, 2019, and June, 2020. The EEOC issued its decision in that case in September, 2023, at which time the EEOC notified plaintiff that if it did not issue a final order within 40 days of plaintiff

receiving the decision, the order would become final, subject to appeal or to a claim in federal court. Plaintiff did not, however, appeal that decision or seek to amend his ongoing federal case to add those additional allegations until ten months later. That aspect of plaintiff's complaint is therefore untimely, see 42 U.S.C. §2000e-16(c), and, for the same reasons articulated previously, plaintiff is not entitled to equitable tolling, see Rodriguez, 2007 WL 9798216, at *3; Chico-Velez, 139 F.3d at 58-59.

Quinn suggests that, nevertheless, his claim should be considered because he misunderstood the requirements to seek relief from that order. His pro se status does not, however, relieve him of the obligation to abide by procedural requirements. See Brown, 451 F. Supp. 2d at 277; Decoulos, 2018 WL 3553351, at *12.

Plaintiff also contends that, because his allegations represent a continuing practice of Title VII violations, his otherwise untimely allegations should be considered. Under the continuing violation doctrine, a plaintiff can seek recovery for time-barred acts of discrimination "so long as a related act fell within the limitations period." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015) (internal quotation marks omitted). That is not the case, however, when some acts fell outside the limitations period and others did not. Instead, none of

plaintiff's allegations was brought within the requisite 90-day period provided by §1614.407(b). As such, plaintiff's allegations of conduct occurring after 2019 are untimely and will not be credited.

### c. Allegations with Respect to the Title VII Claim

In essence, the claims which Quinn both exhausted and timely raised are those allegations of discrimination arising between July, 2016, and March, 2017, that he raised in his first complaint before the EEOC. According to defendants, those limited allegations fail to state a claim under Title VII which provides, in relevant part, that

> [a]ll personnel [working for the] executive agencies [of the federal government] shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. §2000e-16.

Because plaintiff does not specify the kind of Title VII claim he raises and, out of an abundance of caution for his pro se status, the Court will address, in turn, three possible variations of Title VII claims: 1) discrimination, 2) hostile work environment and 3) retaliation. According to defendants, plaintiff has failed to state a claim with respect to any of those grounds.

#### i. Discrimination

To establish a prima facie case of discrimination, the plaintiff must demonstrate that 1) he is a member of a protected

- 11 -

class, 2) he is qualified for the job, 3) he suffered an adverse employment action from his employer and 4) there is some evidence of a causal connection between his membership in a protected class and the adverse employment action. O'Horo v. Bos. Med. Ctr. Corp., 131 F.4th 1, 13 (1st Cir. 2025) (quotations omitted) (citing Stratton v. Bentley Univ., 113 F.4th 25, 38 (1st Cir. 2024); Luceus v. Rhode Island, 923 F.3d 255, 258 (1st Cir. 2019)).

In this case, defendants do not dispute that plaintiff is a member of a protected class. Instead, they move to dismiss based upon the absence of an adverse employment action which typically involves acts of

> hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits

by the employer. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010). Plaintiff's allegations here fall short of that standard. Most of the events described between July, 2016, and March, 2017, do not relate to his being fired, demoted or passed over for a promotion but instead articulate acts perceived to be reprimands, rude or demeaning. Such acts do not amount to an adverse employment action. See Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 73 (1st Cir. 2011) (recognizing that criticism and reprimands without tangible consequences are not

adverse employment actions); Pedicini v. United States, 480 F. Supp. 2d 438, 451 (D. Mass. 2007) (indicating that mere rude behavior is not materially adverse).

At most, Quinn's allegations of conduct between July, 2016, and March, 2017, suggest that his employer altered his responsibilities by 1) requiring him to work evening shifts, 2) allowing a co-worker to perform duties assigned to him; and 3) failing to pay plaintiff overtime payments on two occasions. Minor changes in assignments and pay do not, however, amount to an adverse employment action. See Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002) (acknowledging that "transfer" of jobs or "reassignment" to different tasks are not adverse unless it amounts to an objectively material change); see also Burlington, 524 U.S. at 761 (defining adverse employment actions to include significantly different responsibilities or a substantial change in benefits).  In the absence of any allegations of an adverse action that occurred during the time relevant to this case, plaintiff has failed to state a claim for discrimination under Title VII.

### ii. Hostile Work Environment

A plaintiff can also assert a viable Title VII claim when an employer forces him "to work in a discriminatorily hostile . . . environment." Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (quoting Harris v.

Forklift Sys., 510 U.S. 17, 21 (1993)). To succeed on a hostile work environment claim, plaintiff must allege that 1) he is a member of a protected class, 2) he encountered unwelcome harassment, 3) the harassment was based upon race or national origin, 4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment and 5) the conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and he subjectively perceived it to be so. Id.; see Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).

The factors courts consider when determining if an action is sufficiently severe and pervasive, and thus materially alters the conditions of employment, include the frequency of the conduct, whether the conduct is physically threatening or humiliating and whether it unreasonably interferes with the employee's work performance. O'Rourke v. City of Providence, 235 F.3d 713, 729-30 (1st Cir. 2001). When evaluating the severity of the harassment alleged, courts consider the totality of the circumstances in each case. Id.; see Ortiz v. Fed. Bureau of Prisons, 290 F. Supp. 3d 96, 104 (D. Mass. 2017).

In support of a hostile work environment claim in this case, Quinn alleges, among other things, that he was 1) reprimanded for using his cellphone at work, 2) questioned about his need to take breaks and use his allotted sick time, 3)

prevented from participating in certain meetings and 4) subjected to rude, offensive or profane behavior. As with plaintiff's discrimination claim, such allegations are insufficient. To be sure, plaintiff's complaint is rife with factual assertions that, if proven, would demonstrate a difficult and uncomfortable workplace but discomfort in one's workplace, perceived slights and other de minimis offenses do not amount to an actionable hostile work environment claim. See Suarez v. Pueblo Int'l, Inc., 229 F. 3d 49, 54 (1st Cir. 2000) (indicating that employees cannot bring an actionable Title VII claim merely because they feel slighted or offended). Moreover, plaintiff offers no indication that any of those acts, even if they were sufficiently severe, were done because of his race and not for some other factor unrelated to his ethnicity.

Perhaps the most concerning allegation, if true, and one that is not addressed in defendant's motion, is that a coworker hung a Confederate flag near plaintiff's work area. Although undoubtedly disturbing and offensive to any reasonable person, the mere presence of a racially offensive symbol such as a Confederate battle flag, even in conjunction with potentially insensitive remarks, does not create a hostile work environment under Title VII. See Devers v. SNC-Lavalin Generation, Inc., No. 12 CV 3747 RJD CLP, 2014 WL 4954623, at *5 (E.D.N.Y. Sept. 30, 2014) ("[T]he presence of three Confederate flag stickers at a

worksite is not sufficient to support a hostile work environment claim, even in conjunction with the isolated insensitive remarks discussed in the preceding paragraph."); see also Flenaugh v. Airborne Express, Inc., No. 03 C 3687, 2004 WL 407009, at *10 (N.D. Ill. Mar.1, 2004) (finding that the display of a Confederate-flag tattoo was insufficient to create a hostile work environment). Accordingly, plaintiff's complaint fails to state a viable claim of hostile work environment under Title VII.

### iii. Retaliation

Finally, a plaintiff can succeed under Title VII if his employer discriminates against him because he previously opposed any practice that is an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a). Employers cannot retaliate just because an employee brings a claim of discrimination before the EEOC. To present a viable retaliation claim, a plaintiff must allege that 1) he engaged in protected conduct, such as filing a discrimination complaint against the employer, 2) his employer took an adverse employment action against him and 3) the protected conduct and the adverse action were causally linked. See Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 115 (1st Cir. 2024); Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015)).

Demonstrating that the protected activity and the retaliatory acts are causally connected requires, at minimum, some allegation that the employer knew of the plaintiff's protected activity. Alvarado v. Donahoe, 687 F.3d 453, 459 (1st Cir. 2012) (citing Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994)). If the alleged retaliator was wholly unaware of plaintiff's decision to engage in protected conduct, any actions attributable to him cannot plausibly be found to have been induced by retaliatory motives." Id.; see Rodríguez-Severino v. UTC Aero. Sys., 52 F.4th 448, 462 (1st Cir. 2022) ("[O]ne cannot retaliate without any knowledge of the protected activity.").

Here, for the same reasons articulated above, Quinn has failed to allege any actionable adverse employment action, thereby vitiating his claim for retaliation. Even assuming he had presented sufficient allegations of an adverse employment action, moreover, there is nothing in his complaint to suggest that his employer knew that plaintiff had engaged in protected conduct by contacting an EEOC counselor in July, 2016, or by filing a complaint with the EEOC in October, 2016. Absent any allegations that his employers were aware of those protected actions, there can be no plausible causal connection between plaintiff's contact with the EEOC and any purported adverse employment action taken by defendants. See Kinzer, 99 F.4th at

115; Alvarado, 687 F.3d at 459. Plaintiff's retaliation claim therefore fails as a matter of law.

### iv. Allegations for ADEA Claim

Finally, defendants contend that plaintiff's claim under the ADEA is unavailing because plaintiff did not plead sufficient facts that any action taken against him occurred because of his age. To state a claim for age discrimination under ADEA, a plaintiff must allege that 1) he is at least 40 years old, 2) he met the legitimate expectations of his employer, 3) he suffered an adverse employment action and 4) either the employer a) hired a younger employee to replace the plaintiff or b) did not treat the plaintiff "age neutrally" in taking the adverse employment action. Santana-Vargas v. Banco Santander Puerto Rico, 948 F.3d 57, 60 (1st Cir. 2020) (citing Del Valle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 128 (1st Cir. 2015)).

Quinn's allegations here cannot satisfy the requirements of an AEDA claim. He does not allege how old he is and, even assuming he is 40 years old, his complaint alleges no adverse employment action taken because of his age. At most, plaintiff contends that young employees were treated more favorably than he was by superiors which is insufficient to state a plausible ADEA claim. See Salomon v. Mass. Hous. Fin. Agency, No. 22-cv-10181-ADB, 2023 WL 2588334, at *11 (D. Mass. Mar. 21, 2023)

(dismissing age discrimination claim where plaintiff alleged that his employer "was more lenient with . . . younger employees" but did not plausibly connect that concern with any adverse employment action); Daniels v. Alvaria, Inc., No. 23-CV-10419-DJC, 2024 WL 758172, at *9 (D. Mass. Feb. 23, 2024) (similar); Roque v. MetroHealth, Inc., No. 21-1415, 2023 WL 3866922, at *3 (1st Cir. June 7, 2023) (similar).[3]

Because all three of plaintiff's Title VII claims, based upon allegations of relevant conduct between July, 2016, and March, 2017, as well as plaintiff's ADEA claim fail as a matter of law, defendant's motion to dismiss will be allowed.

**ORDER**

For the foregoing reasons, the motion to dismiss of defendants, Lloyd J. Austin, III, the Secretary of United States Department of Defense, and Christine Wormuth, the Secretary of the Department of the Army (Docket No. 70) is **ALLOWED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated: October 7, 2025

---

[3] Because plaintiff has failed to state an ADEA claim, the Court need not address defendants' alternative argument that his claim is procedurally barred.